92 F.3d 1186
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Leopoldo VALDEZ, Defendant-Appellant.
 No. 95-1790.
 United States Court of Appeals, Sixth Circuit.
 Aug. 1, 1996.
 
 Before: KEITH, BOGGS, and COLE, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant Valdez was convicted of conspiracy to distribute cocaine and marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846. He was sentenced to 120 months in prison, to be followed by three years of supervised release. Valdez appeals on the ground that there was insufficient evidence to support his conviction, although he failed to move for a verdict of acquittal based on insufficiency of the evidence. While we decide this case on the grounds that there was no manifest injustice, we also hold that under either an insufficiency standard or manifest injustice standard there existed enough evidence in the record to support a guilty verdict and therefore AFFIRM the district court's decision.
 
 
 2
 * This case involves a large drug ring that brought cocaine and marijuana from Texas to Michigan, and then distributed the drugs to dealers in Michigan. It operated from approximately 1985 to 1992. The leaders of the ring were separately convicted, or arranged plea agreements with the government, leaving Valdez to stand trial alone. In the course of the trial, the government established that the operation basically consisted of various participants driving drugs from Texas to Michigan secreted in compartments of a number of vehicles. The drugs were then distributed throughout Michigan by other members of the conspiracy. There was apparently a systematic division of labor within the ring, including loaders, drivers, and distributors in Houston, Grand Rapids, and Detroit.
 
 
 3
 The government characterizes Valdez as a physical laborer in the organization who lived with Marge Salas, the mother-in-law of the ring leader (and a high-level organizer in her own right) of the conspiracy. Although Valdez claims he was convicted solely because he associated with conspiracy members, the government points to at least four separate incidents that demonstrate Valdez's active involvement. These will be discussed below in the analysis of the sufficiency of the evidence.
 
 II
 
 4
 The appropriate standard of review, given Valdez's failure to move for acquittal based on insufficiency of the evidence was detailed in United States v. Horry, 49 F.3d 1178, 1179 (6th Cir.1995), where we wrote:
 
 
 5
 We need not address this argument, however, because defendant did not properly preserve her argument for appellate review. In order to appeal a conviction based on sufficiency of the evidence, a defendant must move for judgment of acquittal during trial or within seven days after the jury is discharged pursuant to Fed.R.Crim.P. 29.... Absent a manifest miscarriage of justice, defendant's failure to move for judgment of acquittal on the wire fraud count constitutes a forfeiture of her right to challenge the sufficiency of the evidence on this count.
 
 
 6
 Because Valdez similarly failed to preserve his sufficiency argument, our inquiry should end after an examination of whether there has been a "manifest miscarriage of justice." We have not specifically defined what, if anything, is required beyond a legal insufficiency of the evidence to constitute such a manifest injustice, but we conclude that this case certainly does not rise to that level.
 
 III
 
 7
 Even if Valdez had preserved his challenge to the sufficiency of the proof on appeal, we would still affirm his conviction. To prove a defendant guilty of a drug conspiracy, the government must prove (1) the existence of a conspiracy, and (2) that a defendant knew of, intended to join, and participated in the conspiracy. United States v. Ferguson, 23 F.3d 135, 140 (6th Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 259 (1994) (citation and quotation omitted). Review of a defendant's connection to a drug conspiracy is as follows:
 
 
 8
 The evidence on appeal must be viewed in the light most favorable to the government. If a reasonable mind might fairly conclude there was enough evidence to find guilt, the verdict must stand. Once the government proves that a conspiracy existed, the defendant's "connection to the conspiracy must be shown beyond a reasonable doubt, but the importance of the connection need not be great."
 
 
 9
 United States v. DeFranco, 30 F.3d 664, 668 (6th Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 349 (1994) (quoting United States v. Betancourt, 838 F.2d 168, 174 (6th Cir.), cert. denied, 486 U.S. 1013, 108 S.Ct. 1748, (1988)) (citations omitted). Since Valdez does not dispute the existence of a conspiracy, only the question of his involvement in the conspiracy, the government need only adduce adequate evidence that Valdez was a part of the conspiracy.
 
 
 10
 A review of the evidence presented confirms that the government met this standard. Four separate incidents tie Valdez to the conspiracy.
 
 
 11
 (1) The testimony of an admitted conspiracy member, Gordon Darby, places Valdez at a Motel 8 in Detroit while Salas and Darby negotiated over a proposed sale of 25 pounds of marijuana by Salas to Darby. Valdez sat on a bed next to the marijuana while Salas negotiated, carried the marijuana to and from an automobile to the motel room, and helped negotiate about the price and terms in the parking lot.
 
 
 12
 (2) McCarty, another drug purchaser, testified that he talked with Valdez on the phone about drug transaction prospects, and that he once sent Valdez $1,000 to buy drugs for him while traveling in Texas. Valdez argues in his brief that it was only natural for him to answer the phone at his own house, but fails to account for the extent of the conversations related to the conspiracy.
 
 
 13
 (3) Darby further testified that Valdez asked him to locate Vernon McCarty to straighten out a drug debt. Julio Duverney (another co-conspirator) testified that he was with Valdez when Valdez negotiated with an individual known as "El Capitan," who the organization owed money for drugs. Duverney testified that Valdez made some kind of deal to stave off violence on the part of El Captain.
 
 
 14
 (4) Duff Crothers, a driver in the ring, testified that he asked Salas to ask Valdez to help him conceal cocaine for transport by taking a tire off a wheel rim. According to Crothers, Valdez did so after hearing the purpose of the mission from Salas. Valdez confirms this in his brief, but argues that he was not present when the cocaine was actually stowed, and that his poor English prevented him from understanding what was happening. However, the evidence showed that Salas instructed him in Spanish. In any event, it was for the jury to determine the truth of this evidence connecting him to the conspiracy.
 
 IV
 
 15
 Valdez failed to preserve his challenge to the sufficiency of evidence absent manifest injustice, no such injustice exists here, and, in any event, the government provided evidence sufficient to allow a rational jury to convict Valdez of involvement in the drug conspiracy. We therefore AFFIRM his conviction in all respects.